lature.   We approve the opinion of the court below and its judgment will be affirmed.

*Ampt, Ireton, Collins & Schoenle,* for plaintiffs in error.
*Frank F. Dinsmore,* contra.

---

### INTERFERENCE WITH WATER PIPE BY GRANTOR.

[Circuit Court of Lorain County.]

A. J. TURNER v. CLINTON DEWITT.

Decided, October 8, 1903.

*Deed—In the Ordinary Warranty Form—Granting All the Appurtenances Thereto Belonging—Carries the Right to Use Waterpipe Leading to House on the Lot Sold—Notwithstanding Along Part of Its Course It Lies Withing a Lot Not Conveyed—Pleading.*

1. Where a lot is conveyed by an ordinary deed of warranty, granting the premises with all appurtenances thereto belonging, the warranty covers the right to the use of the grantee of·a waterpipe leading to a dwelling on the lot conveyed; and reasonable damages may be recovered by the grantee on account of the cutting of the pipe by the grantor, notwithstanding along a part of its course the pipe lies over the line and on a lot still owned by the grantor.
2. In drawing a petition in such a case it is the better practice to make the deed an exhibit, and not make it a part of the petition.

MARVIN, J.; HALE, J., and WINCH, J., concur.

The case of A. J. Turner against Clinton DeWitt is a proceeding in error to reverse the judgment of the court of common pleas of this county.   In that court suit was brought by DeWitt against Turner upon this state of facts:   Turner was the owner of real estate at the corner of Forest and Livingston streets in the city of Lorain, and this real estate thus owned, whether divided into lots or not I do not know, I believe it was; but in any event, the property fronting on Forest, the part of this real estate fronting on Forest and not abutting upon Livingston was sold by Turner to DeWitt; on the property thus sold to DeWitt was a dwelling house.   Water was supplied to the lot sold to DeWitt by a pipe running from the

main waterpipe across the other part of this real estate of
Turner's, and extending clear into and upon the lot of DeWitt.
This was so at the time DeWitt received his deed from Turner.
The deed was an ordinary warranty deed, and granted the
premises with all the appurtenances thereunto belonging, prac-
tically that is the reading. And by the way, I think it would
be well enough to criticise the petition in this case to this ex-
tent—the deed is not only made an exhibit, but a part of the
petition. It would be a good deal better to follow the statute
and make it an exhibit, and not make it a part of the petition.
But it is admitted that the copy attached is a true copy of
the deed.

So when DeWitt owned the property, he held it by a deed
from Turner, which conveyed to him the property by metes
and bounds, together with all the appurtenances thereunto be-
longing. As already stated, the pipe passing along of course
under the surface of the other land of Turner, conveyed water
to DeWitt's property. After DeWitt purchased the property
he had connections made with the hydrant which was already
upon the lot and to which water was conveyed by the pipe
already spoken of, so that water was conveyed into his house.

Some time after the purchase by DeWitt, Turner cut the
waterpipe near the line, or close to the line, between his own
property, which he still retained, and that of DeWitt, and
thereby cut off the supply of water to DeWitt. In his answer
he says that DeWitt was in arrears for water rent, and under
some rule of the water company the water would be cut off
from them both, but that is not sustained by the evidence.

The claim on the part of Turner is, that he had a right to
cut that water off; that he sold by metes and bounds to DeWitt
the lot; that DeWitt still has the lot; he never has interfered
with his having the lot, but that he did not sell him any water-
pipe or any rights in any waterpipe. Of course, if he did con-
vey to him any rights, it is because either to the necessary
enjoyment of the property which he did sell this pipe was
an appurtenance, or because the deed conveyed the land with
the appurtenances.

The evidence shows that to the proper enjoyment of this property purchased from Turner by DeWitt it was necessary to have the water upon the lot, and the cutting off by Turner of the waterpipe necessitated DeWitt making a connection from Forest street to his premises, and that connection the evidence shows was an expense of $23.80. That is to say, that amount was paid to the man who put in the connection; then he had to pay the water company $5 for something, I do not exactly know what, and he says his land was injured by the earth being thrown up to make the ditch, and it was a good deal of injury to his lawn.

The case was tried to the court without a jury. The court rendered judgment for DeWitt for $25. Neither in the motion for a new trial nor in the petition in error is any complaint made that the amount allowed was excessive; if that were made, we should hold against it.

We understand that by this deed DeWitt had an interest as an appurtenance to his property in this waterpipe, and that it was an interference with the appurtenance, which Turner had warranted to DeWitt, when he cut it.

In Second Metcalf, the case of *Johnson* v. *Jordan*, beginning on page 234, certain propositions are announced by the court, and pretty well recognized by the profession, and are well expressed. On page 240:

"There are some general and well settled rules of construction of conveyances, which tend in some degree to settle the question. The language of the deed is the language of the grantor; he selects the terms, and it being supposed that he will insert all that has been agreed upon beneficial to himself, and will be less careful to state fully all which is beneficial to the grantee, the language is to be construed most strongly against the grantor. Another well settled rule of construction is, that a grant of any principal thing shall be taken to carry with it all which is necessary to the beneficial enjoyment of the thing granted, and which is in the power of the grantor to convey. When therefore a party has erected a mill on his own land, and then sells the mill, without the land through which such artificial raceway passes, the right to use such raceway through the grantor's land shall pass as a privilege annexed *de facto* to the mill and necessary to its beneficial use. (Citing authorities).

"Under these rules, it might perhaps be held, that if a man, owning two tenements, has built a house on one, and annexed thereto a drain, passing through the other, if he sell and convey the house with the appurtenances, such a drain may be construed to be *de facto* annexed as an appurtenance, and pass with it; and because such construction would be most beneficial to the grantee."

Without reading further we think that authority is in point, that when that deed was made granting this property and appurtenances, it carried with it the right to have water through this waterpipe; when that was cut off a damage was done to the plaintiff below, DeWitt, which under his deed Turner was bound to warrant against, and he was therefore liable in damages, and the judgment of the court of common pleas is affirmed.

*D. H. Aiken* and *G. E. Hall,* for plaintiff in error.

*C. F. Adams* and *C. Chapman,* for defendant in error.